NEW YORK BELTING CO. (DECKER v.).
See Case No. 3,727.

## Case No. 10,203.

### NEW YORK CENT. & H. R. R. CO. v. BAILEY.

[20 Int. Rev. Rec. 25.]

Circuit Court, N. D. New York.   1874.[1]

RAILROADS—CONSOLIDATION—EFFECT UPON REME-
DIES FOR ENFORCING LIABILITIES—STOCK CER-
TIFICATES OF OLD COMPANY—TAXATION—SCRIP
DIVIDEND.

1. By the act of the legislature of New York
consolidating the New York Central and Hud-
son River Railroads, the remedies for enforcing
liabilities against the property of the former cor-
poration are extended so as to allow enforce-
ment from the property of the new corporation
formed by the consolidation, to the same extent
as though it were the debtor.

2. But the stock certificates issued by the New
York Central Railroad, to represent the earn-
ings invested in construction and equipment,
are not taxable as "scrip dividends," within the
meaning of the internal revenue law [13 Stat.
223]. A verdict is therefore directed for the
plaintiffs for the amount of $594,002.89.

[This was an action at law by the New
York Central & Hudson River Railroad Com-
pany, against John M. Bailey, collector of in-
ternal revenue, to recover certain assessments
alleged to have been illegally exacted by de-
fendant.]

WALLACE, District Judge.  The section of
the internal revenue law under which this tax
was imposed, requires "every railroad com-
pany that may have declared any dividend
in scrip or money payable to its stockholders
as part of the earnings, profits, income or
gains of such company," to pay a tax of "five
per centum on the amount of such dividend
whenever the same shall be payable."  An-
other clause of the same section requires
every railroad company to pay a tax of five
per centum "on all profits of such company,
carried to the account of any fund, or used
for construction."  In March, 1870, the as-
sessor of the 14th collection district of this
state assessed the interest certificates issued
by the New York Central Railroad Company
on the 19th day of December, 1868, describ-
ing in his assessment the subject of the tax
as a "scrip dividend."  Subsequently a war-
rant of distraint was issued by the collector
of said district against the property of the
New York Central and Hudson River Rail-
road Company, directing the seizure and sale
of the property of the last named corporation
for the satisfaction of such part of the said
assessed tax as had not prior thereto been
remitted by the commissioner of internal
revenue, and upon the warrant levied upon
the property of the last named corporation,
sold a portion of it, and thereupon the corpora-
tion, under protest, paid the sum remaining

1 [Reversed in 22 Wall. (89 U. S.) 604.]

unsatisfied upon the warrant.  This action is
brought to recover the sums received from
the plaintiff under such levy, sale and pay-
ment, and involves the question whether such
tax was illegally or erroneously imposed by
said assessor or illegally collected by the col-
lector.

Passing over certain other questions which
have been raised in this case by the plaintiff,
the serious questions in my view of the case
to be decided are these: 1. Was the assess-
ment valid against the N. Y. C. Railroad
Company, assuming it had declared a divi-
dend in scrip within the meaning of the reve-
nue act? 2. If the assessment was valid, did
it justify the seizure and sale of property of
the New York Central and Hudson River
Railroad Co.? 3. Did the New York Central
Railroad Co. declare a dividend in scrip with-
in the meaning of the section referred to?

The first and second of these questions can
be most conveniently considered together.  It
is insisted by the plaintiff that when under
act of the legislature the New York Central
Railroad Company consolidated with the oth-
er corporation thenceforth known as the New
York Central and Hudson River Railroad
Company, the first named company passed
out of being and could not be assessed, and
even if it could have been, such an assess-
ment would not justify a levy upon the prop-
erty of a new and distinct corporation.  In
my judgment the peculiar provisions of the
act of consolidation under which the New
York Central Railroad Co. united with the
Hudson River Railroad Company, and were
both thus constituted a single and new cor-
poration, obviate the objections urged by the
plaintiff.  By that act it is provided that the
"rights of all creditors of and all liens upon
the property of either of said corporations,
shall be preserved unimpaired, and the re-
spective corporations shall be deemed to con-
tinue in existence, to preserve the same, and all
debts and liabilities incurred by either of such
corporations shall thenceforth attach to such
new corporation and be enforced against it
and its property to the same extent as if said
debts and liabilities had been incurred or con-
tracted by it."  A liability existed by the
former corporation to pay this tax.  It was
a debt which the United States might have
enforced by action.  The former corporation
by the act is deemed to continue in exist-
ence, to preserve the rights and remedies of
creditors unimpaired.  Among these rights
was that of the United States to enforce pay-
ment of the tax if one was due.  Its officers
could have assessed it upon, and collected it
of the former corporation.  The assessment
therefore was valid.  By the act the reme-
dies for enforcing the liability are preserved,
not only as against the property of the for-
mer corporation but are extended so as to al-
low enforcement from the property of the
new corporation to the same extent, as
though it was the debtor.  By force of the
statute then, the assessment against the

former corporation became in law an assessment against the new, and its property could be properly seized and sold to satisfy the liability.

My conclusion is that these questions must be determined adversely to the plaintiff.

As to the third question, whether the New York Central Railroad declared a dividend in scrip within the meaning of the section referred to, it is to be determined from certain undisputed facts, which are as follows: From the organization of the company in 1853, to the time of the adoption of the resolution hereafter to be mentioned, the company had expended a large portion of its earnings in the purchase of real estate, the construction of additional tracks, and for general additions to its property. On the 19th day of December, 1868, its directors passed the following resolutions: "Whereas, this company has hitherto expended of its earnings for the purpose of constructing and equipping its road, and in the purchase of properties with a view to the increase of its traffic, moneys equal in amount to eighty per cent. of the capital stock of the company, and whereas, the several stockholders of the company are entitled to evidence of such expenditure, and to reimbursement of the same at some convenient future period. Now, therefore, resolved, that a certificate signed by the president and treasurer of the company be issued to the stockholders, severally, declaring that such stockholder is entitled to eighty per cent. of the amount of the capital stock held by him, payable ratably with the other certificates issued under this resolution, at the option of the company, out of its future earnings with dividends thereon. at the same rates and times as dividends shall be paid on the shares of the capital stock of the company. And that such certificate may be at the option of the company convertible into stock of the company, whenever the company shall be authorized to increase its capital stock to an amount sufficient for such conversion. Resolved, that such certificates be delivered to the stockholders at the office of the company in the city of New York, on the presentation of their several certificates of stock, and that the receipt of the certificates provided for in these resolutions shall be endorsed on said certificates." Pursuant to these resolutions, certificates were issued by the company to its stockholders, and a copy of the resolutions was annexed to each certificate. The certificates are in the following form: "The New York Central Railroad Company, No. ———. Interest certificate Under a resolution of the board of directors of the company, passed December 19th, 1868, of which the above is a copy, the New York Central Railroad Company hereby certifies that ———, being the holder of ——— shares of the capital stock of said company, is entitled to ——— dollars payable ratably with the other certificates issued under said resolution, at the pleasure of the company. out of

its future earnings, with dividends thereon, at the same rates and times as dividends shall be paid upon the shares of the capital stock of the company. This certificate may be transferred on the books of the company on the surrender of this certificate. In witness whereof, the said company has caused this certificate to be signed by its president and treasurer, this 19th day of December, 1868."

Was the action of the company declaring a dividend in scrip within the meaning of the act? It is best to dismiss at the outset any distinction which may be claimed to exist between a "dividend in scrip" and a stock dividend. Abstract definitions of the words "scrip" and "dividend" are not profitable in the inquiry. The whole scheme of the portion of the internal revenue act in which the section in question is found, contemplates the taxation of incomes of individuals and corporations. Dividends are included as well known indicia of the income of corporations, and constitute the profits divided by them after paying the expenses of their business and operations. They are usually declared in money, but as they are sometimes declared in stock and known as "scrip dividends," and as when so declared they represent income as profits which are apportioned to stockholders in stock instead of in money, congress intending to reach income in every form, subjected to tax, "dividends in scrip or money." The inquiry then is, were the interest certificates as issued by the company a stock dividend? If they conferred on the respective stockholders any greater interest in the earnings or capital of the corporation than they had before receiving them, then they were a stock dividend, though called "interest certificates." If they did not, they were not a stock dividend. Congress did not intend to tax dividends in stock which were not so in fact, and did not seek while in search of income to subject to tax that which is not income. In other words they did not intend to tax as stock dividends those myths. which in the process known as "watering stock" are sometimes assigned to shareholders of corporations as stock dividends. This intent is apparent from the limitation expressed, the tax is imposed on dividends declared in scrip or money "due as part of the earnings, profit, income or gains of such company." The certificates issued by the New York Central Railroad Company were issued as representing earnings and profits accruing from the operations of the company, and to that extent meet the requisites of a stock dividend. But did they vest in its stockholders any greater interest in its earnings or capital than they had prior thereto? In my judgment they did not. By the certificates and resolutions the stockholders are entitled severally to eighty per cent. more of the stock than they had before "at the option of the company." In other words. each stockholder shall have additional stock to that amount if

the company shall in its discretion and at its pleasure see fit to assign it to him. The directors of the company reserve the right to decline at their volition or caprice to assign any additional stock. The stockholder receives nothing by the declaration of the resolutions and certificates but the naked assurance of a possibility which at some indefinite future period may result to his advantage. It is in no sense a vested right capable of enforcement, for he never could compel the company to transfer to him additional stock. It is true that the resolutions and certificates entitle the stockholder to a dividend to be paid on the 80 per cent., "at the same time and ratably with dividends on the capital stock." But I fail to see how this in any manner enures to his advantage. The earnings of the company, instead of being applied to dividends on his capital stock, are applied on that and the certificates ratably, and to the extent that he receives a dividend on the certificates, his dividend on the capital stock is reduced. The stockholder derives and the company appropriates no income by the transaction which would not have been derived and appropriated if the certificates had never been issued. Another feature of the certificates is an important one, as marking a wide difference between their legal effect and that of a certificate of stock. The 80 per cent. is not to be paid out of the general assets and earnings of the corporation, neither are the dividends which are thereafter to be made. The dividends to be declared upon the certificates are only to be paid out of the future earnings of the company. Upon a dissolution of the corporation these certificate holders would receive no part of the assets, except those accumulated from the earnings after the certificates were issued. An assignment of all dividends thereafter to arise upon stock may in law amount to a transfer of the stock, because it would entitle the assignee to receive all the original stockholder could have obtained of the assets of the corporation. But a holder of these certificates would have no such right and would not stand at all in the position of a stockholder toward the corporation in case of a dissolution. It is not claimed that these certificates give to the holder the right to vote, and here again in an important feature these certificates fail to vest the holder with the rights of a stockholder.

Tested by all the rules by which we are to determine whether these certificates were certificates of stock and as such entitle the holder to the rights of a stockholder in the corporation, the result is adverse to a conclusion in the affirmative. The tax was intended to be imposed upon gains and profits actually appropriated by the company and derived by the stockholder. The section which imposed it, authorizes the company to deduct or withhold from all payments on account of any dividend due and payable as aforesaid, the tax of five per centum from the stockholder to whom the same is payable. Can it be seriously asserted that if the New York Central Railroad Company had withheld five per cent. of the eighty per cent. from the amount of its dividend next declared after it issued these certificates, and deducted that sum from the dividends due to a stockholder, the company would have been protected? The stockholder would have insisted that he had received no additional income by reason of the certificates, and it was not intended by the law to tax him through the corporation for that for which he could not be taxed personally. Or suppose again the assessor had attempted to compel the stockholder to pay a five per cent. tax on a sum equivalent to eighty per cent. of his stock in the company, on the ground that the company had not deducted the tax from his dividend. Would it not be revolting to common sense to insist that he should pay on these certificates as income actually received by him, when he had not only received no income in fact, but had not received that from which he could enforce or derive income in the future by any legal remedy? If the certificates did not represent income received by the stockholder, they were not of the character which the law intended to reach, because the dividends subjected to the tax were only those from which by the act the corporation could deduct the five per cent. imposed on the income of a stockholder derived by him in the form of a dividend.

It is insisted on behalf of the collector that the resolutions and certificates were artfully expressed by those who originated them, with the design thereby to evade the payment of the tax in question, and that the company should not be permitted by artifice to escape payment of the tax. Whatever may have been the intent, if the company did not declare a dividend it did not become liable to the tax. The tax is imposed on the act, not on the motive. While the stamp tax was in force, individuals frequently declined to take receipts for payments to save the cost of the stamps, but it has never been supposed that such individuals were liable for penalties.

Entertaining these views, my conclusion is that the tax was erroneously assessed, and the defendant must pay the amount realized by his proceedings. Had the tax been assessed upon the "profits of such company, carried to the account of any fund or used for construction," it might have been enforced for the amount actually carried to the fund or used for construction since 1862 when the internal revenue act was adopted. By the assessment made it was attempted to compel the plaintiff to pay a tax on income derived and expended by it in construction for nine years prior to the adoption of the law as well as for that derived and expended for the six years after such law was passed. The gross injustice which would result if such an assessment was contemplated by the act affords a strong argument against any interpretation that would permit it. It is an elementary

rule that no construction will be tolerated in a statute which will allow it to operate retrospectively.

It is unnecessary to discuss the effect of a remission of a portion of the tax by the commissioner of internal revenue. The action now on trial must stand or fall upon the validity of the assessment upon which the warrant of restraint was issued and collected. If the railroad company was indebted to the government for taxes because it had expended sums in construction on which it did not pay the tax, the amount so expended should have been ascertained from competent sources of information and collected by assessment for the amount so expended as by action. The remedy by action still remains, having been preserved, although the act imposing the tax has been repealed. In such an action the exact sum due, if any there is, can be ascertained and the amount collected. I therefore direct a verdict for the plaintiffs for the amount of $594,002.89.

[NOTE. Pursuant to this direction a verdict was entered for the full amount claimed. This judgment was reversed by the supreme court. where it was carried by writ of error. 22 Wall. (89 U. S.) 604. A second trial was then had. which resulted in a verdict and judgment in favor of the plaintiff, amounting. with costs. to $518,940.99. Case unreported. A writ of error was then sued out to the supreme court, where the judgment of the circuit court was affirmed. 106 U. S. 109, 1 Sup. Ct. 62.]